NAGEL RICE, LLP
COUNSELLORS AT LAW

BRUCE H. NAGEL*
JAY J. RICE*
ROBERT H. SOLOMON
DIANE E. SAMMONS◊
LORI I. MAYER◊
RANDEE M. MATLOFF
ANDREW L. O'CONNOR
GREG M. KOHN◊
SUSAN F. CONNORS

HARRY A. MARGOLIS
(1928-2002)

103 EISENHOWER PARKWAY
SUITE 103
ROSELAND, NEW JERSEY 07068
(973) 618-0400
FAX: (973) 618-9194
www.nagelrice.com

230 PARK AVENUE
NEW YORK, NY 10169
(212) 551-1465
PLEASE REPLY TO
ROSELAND OFFICE

OF COUNSEL
CARLETON R. KEMPH◊

BRADLEY L. RICE◊
ANDREW I. PEPPER
MICHAEL J. PARAGANO◊
ZACHARY A. GOLDMAN◊

*CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY
◊MEMBER OF NJ & NY BARS

October 23, 2020

**VIA LAWYERS SERVICE**
Clerk of the United States District Court
District of New Jersey
Martin Luther King Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

> Re: United States of America, ex. rel. John Doe
> Qui Tam Complaint pursuant to Federal False Claims
> Act, 31 U.S.C. §3729 et. seq.

Dear Sir/Madam:

The undersigned represents Plaintiff, the United States of America, ex. rel. John Doe. Enclosed please find an original and one (1) copy of Plaintiff's Qui Tam Complaint pursuant to Federal False Claims Act, 31 U.S.C. §3729 et. seq. Kindly file same and return a stamped copy to the undersigned in the enclosed envelope.

Plaintiff's Complaint is being submitted under seal pursuant to 31 U.S.C. §3730(b)(2) and Local Rule 5.2 and will not be filed on PACER.

Enclosed, please also find the filing fee of $400.00 made payable to Clerk, U.S. District Court.

Thank you for your attention to this matter.

Respectfully submitted,
/s/ Jay J. Rice
JAY J. RICE

1

JJR/ld
Encl.
CC:  Craig Carpenito, Esq.
     U.S. Attorney for the District of New Jersey
     970 Broad Street, 7th Floor
     Newark, NJ 07102

     William Pelham Barr, Esq.
     U.S. Attorney General
     U.S. Department of Justice
     950 Pennsylvania Avenue, NW
     Washington, DC 205330-0001

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. JOHN DOE, | : Civil Action No. |
| Plaintiffs, | : QUI TAM COMPLAINT AND : DEMAND FOR JURY TRIAL |
| v. | : : FILED UNDER SEAL PURSUANT : TO 31 U.S.C. §3730(b)(2) |
| ANONYMOUS | : |
| | : DO NOT PLACE IS PRESS BOX |
| Defendants. | : DO NOT ENTER ON PACER |

Plaintiff United States of America by and through their relator John Doe, by way of Complaint against Defendants, Anonymous states:

## INTRODUCTION

1.   This is an action to recover damages, civil penalties, other statutory relief on behalf of the United States of America pursuant to the qui tam provisions of the Federal False Claims Act, 31 U.S.C. §3729 et. seq. This action seeks to recover damages sustained by and penalties owed to the United States as a result of an ongoing conspiracy and scheme to evade payment of U.S. customs duties.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. ANGEL FIGUEROA, | : Civil Action No. |
| | : |
| | : |
| | : **QUI TAM COMPLAINT AND** |
| Plaintiffs, | : **DEMAND FOR JURY TRIAL** |
| | : |
| v. | : |
| | : **FILED UNDER SEAL PURSUANT** |
| | : **TO 31 U.S.C. §3730(b)(2)** |
| PENTA INTERNATIONAL CORPORATION | : |
| d/b/a PENTA MANUFACTURING COMPANY | : |
| | : **DO NOT PLACE IS PRESS BOX** |
| | : |
| Defendants. | : **DO NOT ENTER ON PACER** |
| | : |
| | : |

---

Plaintiff United States of America by and through their relator Angel Figueroa, by way of Complaint against Defendants, Penta International Corporation d/b/a Penta Manufacturing Company (hereinafter "Defendant" or "Penta"), states:

## INTRODUCTION

1.    This is an action to recover damages, civil penalties, other statutory relief on behalf of the United States of America pursuant to the qui tam provisions of the Federal False Claims Act, 31 U.S.C. §3729 et. seq. This action seeks to recover damages sustained by and penalties owed to the United States as a result of an ongoing conspiracy and scheme to evade payment of U.S. customs duties. The duties are owed in connection with the

1

importation and exportation of goods into and out of the United States by a major international manufacturer, Penta whose estimated annual revenue is approximately $10,000,000.00 to $25,000,000.00. The scheme involves the filing of customs declarations and corresponding invoices which fraudulently labeled the goods being imported and exported. For importing, this includes but is not limited to falsely classifying and labeling hazardous materials from foreign countries as non-hazardous to avoid the duty placed on hazardous materials at customs. For exporting, this includes but is not limited to (i) falsely classifying and labeling hazardous materials as non-hazardous to avoid the duty placed on hazardous materials at customs; (ii) falsely declaring and re-labeling the imported materials to list the United States as the country-of-origin; and (iii) falsely misrepresenting and underreporting the weight of the exported materials to avoid duty fees. Such false designations are a material violation of Penta's duty under 19 U.S.C. §1484 to use reasonable care in providing information regarding Penta's imports and exports to the United States for the purpose of properly assessing duties on the merchandise. Such duties comprise an "obligation to pay money" to the United States within the meaning of the False Claims Act.

2. As required by the False Claims Act, 31 U.S.C. §3730(b)(2), the relator has provided the Attorney General of the United States and to the United States Attorney for the District

2

of New Jersey a Memorandum pursuant to 31 U.S.C. §3740(e)(4)(b) and 3730(b)(2), which includes all known material evidence and information related to the Complaint. The Memorandum is supported by material evidence known to the relator, at the time of filing the Complaint, establishing the existence of Defendant's false claims. Because the Memorandum includes attorney-client communications and work product of relator's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the relator understands the statement to be confidential.

## JURISDICTION AND VENUE

3.    This action arises under the False Claims Act, 31 U.S.C. §3729 et. seq. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1331.

4.    Venue is proper in this Court pursuant to 31 U.S.C. §3732(a) because the acts proscribed by 31 U.S.C. §3729 et. seq. occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b) and (c) because at all times material and relevant, defendant has transacted business in this District.

5.    Contemporaneous with the filing of this Complaint, the relator served a copy of same upon the United States, together with the Memorandum setting forth and enclosing all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. §3730(b)(2).

3

## PARTIES

6.      Plaintiff/Relator, Angel Figueroa ("Figueroa") is a resident of Livingston, New Jersey and a former assistant manager of a major international manufacturing company conducting business worldwide out of their location in Livingston, New Jersey. Figueroa was employed by the company from February 1994 to May 2020 and at the time of his separation from the company was responsible for day to day office operations including creating bills of lading, printing shipping labels and communicating with transportation companies for the pickup and delivery of products.

7.      Defendant, Penta International Corporation d/b/a Penta Manufacturing Company ("Defendant" or "Penta") is a corporation founded in 1983, with an office located at 50 Okner Parkway, Livingston, New Jersey and is engaged, inter alia, in the business of importing and exporting flavor and fragrance products worldwide including both hazardous and nonhazardous materials. Specifically, Penta conducts business with a number of countries on every continent, including but not limited to China, Japan, Germany, The United Kingdom, Switzerland, Russia, Australia, Israel, Pakistan, India, South Africa, Puerto Rico, Jamaica, and Canada.

## ALLEGATIONS

8.      When a shipment reaches the United States, the importer of record must file entry documents for the goods at the point of entry. Imported goods are not legally entered until after the

4

shipment has arrived within the point of entry, delivery of the merchandise has been authorized by the U.S. Customs and Border Protection ("CBP"), and duties have been paid. Pursuant to 19 U.S.C. §1484, the importer of record must use reasonable care in making entry, which includes arranging for examination and the release of goods.

9.    In order for the goods to be released, the importer must i) file documents necessary to determine whether merchandise may be released from CBP custody; and ii) file documents that contain information for duty assessment. This includes a customs declaration on CBP Form 7501 ("CBP 7501") and a corresponding "commercial invoice" pursuant to 19 C.F.R. 142.3a. The process can be accomplished via the Automated Broker Interface (ABI) program of the Automated Commercial System (ACS).

10.   The CPB will examine the goods and documents to determine, among other things, i) the value of the goods and their dutiable status; ii) whether the goods must be marked with their country of origin or require special marking or labeling; iii) whether the shipment contains prohibited articles; iv) whether the goods are correctly invoiced; v) whether the goods are in excess of the invoiced quantities or a shortage exists and vi) whether the shipment contains illegal narcotics.

11.   With regard to the classification of goods, the importer has a duty to ensure that the goods are properly classified as all

5

goods imported and exported into and out of the United States are subject to duty or duty-free entry in accordance with their classification under the applicable items in the Harmonized Tariff Schedule of the United States. Rates of duty for imported and exported merchandise vary depending on the classification.

12. With regard to labeling the country of origin, the importer has a duty to ensure that the correct country of origin is contained on all CBP documents and the merchandise is properly marked upon entry and exportation, with the correct country of origin in accordance with 19 U.S.C. §1304. Rates of duty for imported and exported merchandise vary depending upon the country of origin.

13. Defendant, Penta is a major manufacturing company that imports approximately 16,000 drums and 5,000 boxes and exports approximately 8,000 drums and 60,000 boxes of hazardous and non-hazardous chemical materials per year from around the world. In total, Penta imports and exports nearly 6,000 types of chemical materials and has an estimated annual revenue of $10,000,000.00 to $25,000,000.00. As an importer and exporter of merchandise into and out of the country, Penta is subject to the rules and regulations of both the CBP and the United States of America.

14. This action is brought because from at least as early as 2004 to the present, Defendant has engaged in a scheme to evade payment of appropriate United States import duties in connection

6

with shipments of Penta's goods into and out of the United States. Specifically, the scheme involves for importing, this includes but is not limited to falsely classifying and labeling hazardous materials from foreign countries as non-hazardous to avoid the duty placed on hazardous materials at customs. For exporting, this includes but is not limited to (i) falsely classifying and labeling hazardous materials as non-hazardous to avoid the duty placed on hazardous materials at customs; (ii) falsely declaring and re-labeling the imported materials to list the United States as the country-of-origin; and (iii) falsely misrepresenting and underreporting the weight of the exported materials to avoid duty fees.

15.    When goods are going to be imported by Penta, employees of Penta routinely direct the exporting company to mislabel hazardous products as non-hazardous in an effort to lessen the duty owed. For example, Penta routinely imports hazardous materials from oversees suppliers which are labeled as non-hazardous and often include designations of products that are not even sold by the supplying company.

16.    When those imported hazardous materials are then going to be exported by Penta, employees of Penta are routinely directed to mislabel the hazardous products as non-hazardous in an effort to lessen the duty owed. For example, Penta employees will be directed to put hazardous materials in a drum with non-hazardous

7

materials to (i) limit the number of drums that are necessary to export, thereby lessening the number of drums subject to the payment of the required duty; and (ii) avoid a higher duty placed on hazardous materials.

17.  Penta employees are also directed to mislabel the country of origin. For example, on occasions when a product was imported from China, Penta would direct its employees to re-label the products with a Penta label, indicating that it made and exported in the United States.

18.  In addition, Penta employees routinely underrepresent the true weight of the contents they are exporting. For example, Penta employees are directed to label the products as weighing a certain number of liters, when in reality, the weight is higher than allowed by International Air Transport Association (IATA) standards for certain Hazmat products.

19.  Relator has direct, personal knowledge of the scheme alleged herein by virtue of his former employment as assistant manager of Defendant, Penta.

20.  Relator discovered the scheme alleged herein in 2004 when he was promoted from the warehouse to assistant manager. Since relator began working at the company, including his time as assistant manager, his direct supervisor has been Joseph M. Tavares ("J. Tavares"). On a number of occasions, J. Tavares verbally told

8

relator that Penta manager Mark Volpe ("Volpe") directs oversees exporters to mislabel hazardous products as non-hazardous.

21.  By way of example, Penta works with a supplier in China named Yancheng City Chunzu Aroma Company, Ltd. ("Yancheng"). Although Yancheng does not export anise oil, a nonhazardous product, Penta directs Yancheng to label its drums as containing anise oil even though they actually contain hazardous materials.

22.  By way of further example, relator is aware of many hazardous, flammable, and corrosive materials that Penta has directed oversees exporters to mislabel, including but not limited to:

| | |
|---|---|
| Allyl heptoate | UN# 6.1/UN2810/III |
| Ethyl butyrate | UN# 3/UN1180/II |
| Ethyl-n-valerate | UN# 3/UN1993/III |
| Ethyl isobutyrate | UN# 3/UN2385/II |
| Butyl-2-methylbutyrate | UN# 3/UN3272/III |
| Butyl alcohol/n-butyl alcohol | UN# 3/UN1120/III |
| Butyric acid | UN# 8/UN2820/III |
| Butyl acetate | UN# 3/UN1123/II |
| Valeric acid | UN# 8/UN3265/III |
| N-butyraldehyde/butyraldehyde | UN# 3/UN1129/II |
| Isovaleric acid | UN# 8/UN1760/III |
| Isovaleraldehyde/valeraldehyde | UN# 3/UN2058/II |
| Isoamyl alcohol | UN# 3/UN1105/III |
| Isoamyl butyrate | UN# 3/UN3272/III |

23.  The mislabeling of the hazardous materials includes but is not limited to names such as Tuty Fruity (ethyl butyrate),

9

Banana Flavor (butyl acetate), Chocolate Fudge/Chocolate Flavor (isovaleraldehyde/valeraldehyde), Pineapple, Bubble Gum Flavor and Juniper Flavor.

24. Once the mislabeled products enter the Penta facility, Penta warehouse employee Oscar Martinez ("Martinez") uses a special list with codes, provided by Volpe, which identifies the product that was imported including its true contents as hazardous or non-hazardous, regardless of its mislabeling so that it may be properly identified to be re-labeled, shipped or exported to Penta's customer.

25. Penta utilizes a "picking ticket" which indicates what products that a Penta customer is ordering. The Penta sales department creates the picking ticket which is then reviewed by sales manager, Christian Tavares ("C. Tavares") and Volpe for handwritten instructions to be given to the export department when shipping out of the United States. The export department prepares documents with the product information for shipping and exportation in accordance with Volpe's instructions. The picking ticket with this information is then given to the warehouse department to fill or complete the orders.

26. On a number of occasions Volpe has provided written instructions on the picking ticket to the export department to change the hazardous label designation to a non-hazardous label. For example, on a picking ticket dated December 3, 2019, Penta was

10

shipping hazardous materials to a customer named Creanova Flavours ("Creanova") in France. Although the materials were hazardous, on the picking ticket, Volpe directed export manager "Dottie" to create export documents stating that the product being shipped should "ship as Guaiacol Natural."

27. Although Penta does no manufacturing of its own, it is also the custom and practice of Penta to label all products that are exported by Penta as "made in the United States" with a Penta label. For example, on a picking ticket dated May 31, 2020 for Penta's customer Sanyo Trading Company Ltd. ("Sanyo") in Japan, although the materials were imported from China, the picking ticket contained the phrases "NO CHINESE DRUMS" "U.S. Drums only" and "Must be Repacked into U.S. Steel Drums."

28. Although when Penta exports materials they are required to designate the weight of the materials accurately, Penta routinely underrepresents the weight of the drums. For example, on a picking ticket dated October 30, 2019 for Penta's customer Givaudan Schweiz AG ("Givaudan") in Switzerland, Penta employee Christine Tavares ("C. Tavares") directs the Penta employees to underreport the weight of the shipment and "Call it 2.5L."

29. The scheme alleged herein is ongoing.

## COUNT I

### VIOLATIONS OF 31 U.S.C. §3729(a)(1)

#### (Presenting False or Fraudulent Claims to the United States)

1.    Each of the foregoing allegations is realleged and incorporated hereby.

2.    As described in this Qui Tam Complaint, Defendant by and through their officers, agents, and employees: (i) knowingly presented to the United States Government, false or fraudulent claims for payment or approval; and (ii) knowingly made and used a false record or statement to get a false or fraudulent claim paid or approved by the Government.

3.    The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act and is entitled to treble damages under the False Claims Act, to be determined at trial.

## COUNT II

### VIOLATIONS OF 31 U.S.C. §3729(a)(2)

#### (Causing to Be Presented False or Fraudulent Claims to the United States)

1.    Each of the foregoing allegations is realleged and incorporated hereby.

2.    As described in this Qui Tam Complaint, Defendant by and through their officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States

12

Government, false or fraudulent claims for payment or approval; and (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

3.     The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act and is entitled to treble damages under the False Claims Act, to be determined at trial.

## COUNT III

### VIOLATIONS OF 31 U.S.C. §3729(a)(7)

### (False Record to Avoid an Obligation to Pay Money to the United States)

1.     The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

2.     By virtue of the conduct described above, Defendant made or used false records and statements to conceal, avoid or decrease obligations to pay or transmit money to the United States, with knowledge that they were false, and/or with deliberate ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity.

3.     The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act and is entitled to treble damages under the False Claims Act, to be determined at trial.

13

## COUNT IV

### CLAIM FOR INJUNCTIVE RELIEF

1. The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

2. Defendant should be enjoined from submitting false records, false statements, false certifications to CBP and the United States with regard to their importing of products and be enjoined from directing exporters and other entities from mislabeling products.

WHEREFORE, Relator Angel Figueroa on behalf of the United States Government, prays:

(i) That this Court enter a judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's violations of the False Claims Act;

(ii) That this Court enter a judgment against Defendants for a civil penalty of a $11,000.00 for each of Defendant's violations of the False Claims Act;

(iii) That Relator Angel Figueroa recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(iv) That Relator Angel Figueroa be awarded all reasonable attorneys' fees in bringing this action;

14

(v)     That in the event the United States Government proceeds with this action, Relator Angel Figueroa be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action;

(vi)    That in the event the United States Government does not proceed with this action, Relator Angel Figueroa be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of the action;

(vii)   That Relator Angel Figueroa be awarded prejudgment interest;

(viii)  That Relator Angel Figueroa and the United States of America receive all relief to which either or both may be entitled at law or in equity;

(ix)    That defendant be enjoined and restrained from submitting false records, false statements and false certifications to CBP and the United States with regard to their importing of products and be enjoined from directing exporters and other entities from mislabeling products.

## JURY DEMAND

**Plaintiff hereby requests a jury trial on all issues so triable.**

**By: /s/ Jay J. Rice**
   **Jay J. Rice**
   **Michael J. Paragano**
   **NAGEL RICE, LLP**
   **103 Eisenhower Parkway**
   **Roseland, New Jersey 07068**
   **973-618-0400**
   **jrice@nagelrice.com**
   **mparagano@nagelrice.com**

16

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. rel. JOHN DOE, | : Civil Action No. |
| | : |
| | : |
| | : QUI TAM COMPLAINT AND |
| Plaintiffs, | : DEMAND FOR JURY TRIAL |
| | : |
| v. | : |
| | : FILED UNDER SEAL PURSUANT |
| | : TO 31 U.S.C. §3730(b)(2) |
| ANONYMOUS | : |
| | : |
| | : DO NOT PLACE IS PRESS BOX |
| | : |
| Defendants. | : DO NOT ENTER ON PACER |
| | : |
| | : |

Plaintiff United States of America by and through their relator John Doe, by way of Complaint against Defendants, Anonymous states:

## INTRODUCTION

1.      This is an action to recover damages, civil penalties, other statutory relief on behalf of the United States of America pursuant to the qui tam provisions of the Federal False Claims Act, 31 U.S.C. §3729 et. seq. This action seeks to recover damages sustained by and penalties owed to the United States as a result of an ongoing conspiracy and scheme to evade payment of U.S. customs duties.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, ex. | : Civil Action No. |
| rel. ANGEL FIGUEROA, | : |
| | : |
| | : QUI TAM COMPLAINT AND |
| Plaintiffs, | : DEMAND FOR JURY TRIAL |
| | : |
| v. | : |
| | : FILED UNDER SEAL PURSUANT |
| | : TO 31 U.S.C. §3730(b)(2) |
| PENTA INTERNATIONAL CORPORATION | : |
| d/b/a PENTA MANUFACTURING COMPANY | : |
| | : DO NOT PLACE IS PRESS BOX |
| | : |
| Defendants. | : DO NOT ENTER ON PACER |
| | : |
| | : |

Plaintiff United States of America by and through their
relator Angel Figueroa, by way of Complaint against Defendants,
Penta International Corporation d/b/a Penta Manufacturing Company
(hereinafter "Defendant" or "Penta"), states:

## INTRODUCTION

1. This is an action to recover damages, civil penalties,
other statutory relief on behalf of the United States of America
pursuant to the qui tam provisions of the Federal False Claims
Act, 31 U.S.C. §3729 et. seq. This action seeks to recover damages
sustained by and penalties owed to the United States as a result
of an ongoing conspiracy and scheme to evade payment of U.S.
customs duties. The duties are owed in connection with the

1

importation and exportation of goods into and out of the United States by a major international manufacturer, Penta whose estimated annual revenue is approximately $10,000,000.00 to $25,000,000.00. The scheme involves the filing of customs declarations and corresponding invoices which fraudulently labeled the goods being imported and exported. For importing, this includes but is not limited to falsely classifying and labeling hazardous materials from foreign countries as non-hazardous to avoid the duty placed on hazardous materials at customs. For exporting, this includes but is not limited to (i) falsely classifying and labeling hazardous materials as non-hazardous to avoid the duty placed on hazardous materials at customs; (ii) falsely declaring and re-labeling the imported materials to list the United States as the country-of-origin; and (iii) falsely misrepresenting and underreporting the weight of the exported materials to avoid duty fees. Such false designations are a material violation of Penta's duty under 19 U.S.C. §1484 to use reasonable care in providing information regarding Penta's imports and exports to the United States for the purpose of properly assessing duties on the merchandise. Such duties comprise an "obligation to pay money" to the United States within the meaning of the False Claims Act.

2. As required by the False Claims Act, 31 U.S.C. §3730(b)(2), the relator has provided the Attorney General of the United States and to the United States Attorney for the District

2

of New Jersey a Memorandum pursuant to 31 U.S.C. §3740(e)(4)(b) and 3730(b)(2), which includes all known material evidence and information related to the Complaint. The Memorandum is supported by material evidence known to the relator, at the time of filing the Complaint, establishing the existence of Defendant's false claims. Because the Memorandum includes attorney-client communications and work product of relator's attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the relator understands the statement to be confidential.

### JURISDICTION AND VENUE

3. This action arises under the False Claims Act, 31 U.S.C. §3729 et. seq. This court has subject matter jurisdiction over this action pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §1331.

4. Venue is proper in this Court pursuant to 31 U.S.C. §3732(a) because the acts proscribed by 31 U.S.C. §3729 et. seq. occurred in this District. Venue is also proper pursuant to 28 U.S.C. §1391(b) and (c) because at all times material and relevant, defendant has transacted business in this District.

5. Contemporaneous with the filing of this Complaint, the relator served a copy of same upon the United States, together with the Memorandum setting forth and enclosing all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. §3730(b)(2).

3

## PARTIES

6.     Plaintiff/Relator, Angel Figueroa ("Figueroa") is a resident of Livingston, New Jersey and a former assistant manager of a major international manufacturing company conducting business worldwide out of their location in Livingston, New Jersey. Figueroa was employed by the company from February 1994 to May 2020 and at the time of his separation from the company was responsible for day to day office operations including creating bills of lading, printing shipping labels and communicating with transportation companies for the pickup and delivery of products.

7.     Defendant, Penta International Corporation d/b/a Penta Manufacturing Company ("Defendant" or "Penta") is a corporation founded in 1983, with an office located at 50 Okner Parkway, Livingston, New Jersey and is engaged, inter alia, in the business of importing and exporting flavor and fragrance products worldwide including both hazardous and nonhazardous materials. Specifically, Penta conducts business with a number of countries on every continent, including but not limited to China, Japan, Germany, The United Kingdom, Switzerland, Russia, Australia, Israel, Pakistan, India, South Africa, Puerto Rico, Jamaica, and Canada.

## ALLEGATIONS

8.     When a shipment reaches the United States, the importer of record must file entry documents for the goods at the point of entry. Imported goods are not legally entered until after the

4

shipment has arrived within the point of entry, delivery of the merchandise has been authorized by the U.S. Customs and Border Protection ("CBP"), and duties have been paid. Pursuant to 19 U.S.C. §1484, the importer of record must use reasonable care in making entry, which includes arranging for examination and the release of goods.

9. In order for the goods to be released, the importer must i) file documents necessary to determine whether merchandise may be released from CBP custody; and ii) file documents that contain information for duty assessment. This includes a customs declaration on CBP Form 7501 ("CBP 7501") and a corresponding "commercial invoice" pursuant to 19 C.F.R. 142.3a. The process can be accomplished via the Automated Broker Interface (ABI) program of the Automated Commercial System (ACS).

10. The CPB will examine the goods and documents to determine, among other things, i) the value of the goods and their dutiable status; ii) whether the goods must be marked with their country of origin or require special marking or labeling; iii) whether the shipment contains prohibited articles; iv) whether the goods are correctly invoiced; v) whether the goods are in excess of the invoiced quantities or a shortage exists and vi) whether the shipment contains illegal narcotics.

11. With regard to the classification of goods, the importer has a duty to ensure that the goods are properly classified as all

5

goods imported and exported into and out of the United States are subject to duty or duty-free entry in accordance with their classification under the applicable items in the Harmonized Tariff Schedule of the United States. Rates of duty for imported and exported merchandise vary depending on the classification.

12. With regard to labeling the country of origin, the importer has a duty to ensure that the correct country of origin is contained on all CBP documents and the merchandise is properly marked upon entry and exportation, with the correct country of origin in accordance with 19 U.S.C. §1304. Rates of duty for imported and exported merchandise vary depending upon the country of origin.

13. Defendant, Penta is a major manufacturing company that imports approximately 16,000 drums and 5,000 boxes and exports approximately 8,000 drums and 60,000 boxes of hazardous and non-hazardous chemical materials per year from around the world. In total, Penta imports and exports nearly 6,000 types of chemical materials and has an estimated annual revenue of $10,000,000.00 to $25,000,000.00. As an importer and exporter of merchandise into and out of the country, Penta is subject to the rules and regulations of both the CBP and the United States of America.

14. This action is brought because from at least as early as 2004 to the present, Defendant has engaged in a scheme to evade payment of appropriate United States import duties in connection

6

with shipments of Penta's goods into and out of the United States. Specifically, the scheme involves for importing, this includes but is not limited to falsely classifying and labeling hazardous materials from foreign countries as non-hazardous to avoid the duty placed on hazardous materials at customs. For exporting, this includes but is not limited to (i) falsely classifying and labeling hazardous materials as non-hazardous to avoid the duty placed on hazardous materials at customs; (ii) falsely declaring and re-labeling the imported materials to list the United States as the country-of-origin; and (iii) falsely misrepresenting and underreporting the weight of the exported materials to avoid duty fees.

15.  When goods are going to be imported by Penta, employees of Penta routinely direct the exporting company to mislabel hazardous products as non-hazardous in an effort to lessen the duty owed. For example, Penta routinely imports hazardous materials from oversees suppliers which are labeled as non-hazardous and often include designations of products that are not even sold by the supplying company.

16.  When those imported hazardous materials are then going to be exported by Penta, employees of Penta are routinely directed to mislabel the hazardous products as non-hazardous in an effort to lessen the duty owed. For example, Penta employees will be directed to put hazardous materials in a drum with non-hazardous

materials to (i) limit the number of drums that are necessary to export, thereby lessening the number of drums subject to the payment of the required duty; and (ii) avoid a higher duty placed on hazardous materials.

17. Penta employees are also directed to mislabel the country of origin. For example, on occasions when a product was imported from China, Penta would direct its employees to re-label the products with a Penta label, indicating that it made and exported in the United States.

18. In addition, Penta employees routinely underrepresent the true weight of the contents they are exporting. For example, Penta employees are directed to label the products as weighing a certain number of liters, when in reality, the weight is higher than allowed by International Air Transport Association (IATA) standards for certain Hazmat products.

19. Relator has direct, personal knowledge of the scheme alleged herein by virtue of his former employment as assistant manager of Defendant, Penta.

20. Relator discovered the scheme alleged herein in 2004 when he was promoted from the warehouse to assistant manager. Since relator began working at the company, including his time as assistant manager, his direct supervisor has been Joseph M. Tavares ("J. Tavares"). On a number of occasions, J. Tavares verbally told

8

relator that Penta manager Mark Volpe ("Volpe") directs oversees exporters to mislabel hazardous products as non-hazardous.

21. By way of example, Penta works with a supplier in China named Yancheng City Chunzu Aroma Company, Ltd. ("Yancheng"). Although Yancheng does not export anise oil, a nonhazardous product, Penta directs Yancheng to label its drums as containing anise oil even though they actually contain hazardous materials.

22. By way of further example, relator is aware of many hazardous, flammable, and corrosive materials that Penta has directed oversees exporters to mislabel, including but not limited to:

| | |
|---|---|
| Allyl heptoate | UN# 6.1/UN2810/III |
| Ethyl butyrate | UN# 3/UN1180/II |
| Ethyl-n-valerate | UN# 3/UN1993/III |
| Ethyl isobutyrate | UN# 3/UN2385/II |
| Butyl-2-methylbutyrate | UN# 3/UN3272/III |
| Butyl alcohol/n-butyl alcohol | UN# 3/UN1120/III |
| Butyric acid | UN# 8/UN2820/III |
| Butyl acetate | UN# 3/UN1123/II |
| Valeric acid | UN# 8/UN3265/III |
| N-butyraldehyde/butyraldehyde | UN# 3/UN1129/II |
| Isovaleric acid | UN# 8/UN1760/III |
| Isovaleraldehyde/valeraldehyde | UN# 3/UN2058/II |
| Isoamyl alcohol | UN# 3/UN1105/III |
| Isoamyl butyrate | UN# 3/UN3272/III |

23. The mislabeling of the hazardous materials includes but is not limited to names such as Tuty Fruity (ethyl butyrate),

9

Banana Flavor (butyl acetate), Chocolate Fudge/Chocolate Flavor (isovaleraldehyde/valeraldehyde), Pineapple, Bubble Gum Flavor and Juniper Flavor.

24.   Once the mislabeled products enter the Penta facility, Penta warehouse employee Oscar Martinez ("Martinez") uses a special list with codes, provided by Volpe, which identifies the product that was imported including its true contents as hazardous or non-hazardous, regardless of its mislabeling so that it may be properly identified to be re-labeled, shipped or exported to Penta's customer.

25.   Penta utilizes a "picking ticket" which indicates what products that a Penta customer is ordering. The Penta sales department creates the picking ticket which is then reviewed by sales manager, Christian Tavares ("C. Tavares") and Volpe for handwritten instructions to be given to the export department when shipping out of the United States. The export department prepares documents with the product information for shipping and exportation in accordance with Volpe's instructions. The picking ticket with this information is then given to the warehouse department to fill or complete the orders.

26.   On a number of occasions Volpe has provided written instructions on the picking ticket to the export department to change the hazardous label designation to a non-hazardous label. For example, on a picking ticket dated December 3, 2019, Penta was

10

shipping hazardous materials to a customer named Creanova Flavours ("Creanova") in France. Although the materials were hazardous, on the picking ticket, Volpe directed export manager "Dottie" to create export documents stating that the product being shipped should "ship as Guaiacol Natural."

27. Although Penta does no manufacturing of its own, it is also the custom and practice of Penta to label all products that are exported by Penta as "made in the United States" with a Penta label. For example, on a picking ticket dated May 31, 2020 for Penta's customer Sanyo Trading Company Ltd. ("Sanyo") in Japan, although the materials were imported from China, the picking ticket contained the phrases "NO CHINESE DRUMS" "U.S. Drums only" and "Must be Repacked into U.S. Steel Drums."

28. Although when Penta exports materials they are required to designate the weight of the materials accurately, Penta routinely underrepresents the weight of the drums. For example, on a picking ticket dated October 30, 2019 for Penta's customer Givaudan Schweiz AG ("Givaudan") in Switzerland, Penta employee Christine Tavares ("C. Tavares") directs the Penta employees to underreport the weight of the shipment and "Call it 2.5L."

29. The scheme alleged herein is ongoing.

11

## COUNT I

### VIOLATIONS OF 31 U.S.C. §3729(a)(1)

### (Presenting False or Fraudulent Claims to the United States)

1.    Each of the foregoing allegations is realleged and incorporated hereby.

2.    As described in this Qui Tam Complaint, Defendant by and through their officers, agents, and employees: (i) knowingly presented to the United States Government, false or fraudulent claims for payment or approval; and (ii) knowingly made and used a false record or statement to get a false or fraudulent claim paid or approved by the Government.

3.    The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act and is entitled to treble damages under the False Claims Act, to be determined at trial.

## COUNT II

### VIOLATIONS OF 31 U.S.C. §3729(a)(2)

### (Causing to Be Presented False or Fraudulent Claims to the United States)

1.    Each of the foregoing allegations is realleged and incorporated hereby.

2.    As described in this Qui Tam Complaint, Defendant by and through their officers, agents, and employees: (i) knowingly presented, or caused to be presented, to the United States

12

Government, false or fraudulent claims for payment or approval; and (ii) knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

3.    The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act and is entitled to treble damages under the False Claims Act, to be determined at trial.

## COUNT III

### VIOLATIONS OF 31 U.S.C. §3729(a)(7)

### (False Record to Avoid an Obligation to Pay Money to the United States)

1.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

2.    By virtue of the conduct described above, Defendant made or used false records and statements to conceal, avoid or decrease obligations to pay or transmit money to the United States, with knowledge that they were false, and/or with deliberate ignorance of their truth or falsity, and/or with reckless disregard for their truth or falsity.

3.    The United States Government and the public have been damaged as a result of Defendant's violations of the False Claims Act and is entitled to treble damages under the False Claims Act, to be determined at trial.

13

## COUNT IV

### CLAIM FOR INJUNCTIVE RELIEF

1.    The allegations contained above are realleged and incorporated by reference as if fully set forth herein.

2.    Defendant should be enjoined from submitting false records, false statements, false certifications to CBP and the United States with regard to their importing of products and be enjoined from directing exporters and other entities from mislabeling products.

WHEREFORE, Relator Angel Figueroa on behalf of the United States Government, prays:

(i)    That this Court enter a judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's violations of the False Claims Act;

(ii)    That this Court enter a judgment against Defendants for a civil penalty of a \$11,000.00 for each of Defendant's violations of the False Claims Act;

(iii)    That Relator Angel Figueroa recover all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(iv)    That Relator Angel Figueroa be awarded all reasonable attorneys' fees in bringing this action;

14

(v)     That in the event the United States Government
        proceeds with this action, Relator Angel Figueroa be
        awarded an amount for bringing this action of at least
        15% but not more than 25% of the proceeds of the
        action;

(vi)    That in the event the United States Government does
        not proceed with this action, Relator Angel Figueroa
        be awarded an amount for bringing this action of at
        least 25% but not more than 30% of the proceeds of
        the action;

(vii)   That Relator Angel Figueroa be awarded prejudgment
        interest;

(viii)  That Relator Angel Figueroa and the United States of
        America receive all relief to which either or both
        may be entitled at law or in equity;

(ix)    That defendant be enjoined and restrained from
        submitting false records, false statements and false
        certifications to CBP and the United States with
        regard to their importing of products and be enjoined
        from directing exporters and other entities from
        mislabeling products.

## JURY DEMAND

Plaintiff hereby requests a jury trial on all issues so

triable.

By: /s/ Jay J. Rice
Jay J. Rice
Michael J. Paragano
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
jrice@nagelrice.com
mparagano@nagelrice.com

16